HENRY BAKER, Executor of Anna Barbara Baker
et al.

*vs.*

GEORGE H. BAKER and BARBARA A. SMITH.

*Savings bank accounts: in name of depositors, and of third parties named. Gifts inter vivos. Gifts in trust for third parties; delivery. Trusts: creation of—; breach of trust; liability of banks.*

A husband who deposited money in a savings bank to the credit of himself and his wife, without reserving the right to withdraw the fund from the bank, thereby creates a tenancy by the entireties in the fund, which can not be destroyed except by the joint act of himself and wife; and to such tenancy the right of survivorship is incident.      p. 40

Where by the act or consent of both such parties the money was redeposited or the entry in the deposit book changed so as to make the sum deposited payable, after their death or the death of the survivor, to certain other parties named in the book in the amounts specified, such entries do not amount to valid gifts *inter vivos,* there having been no delivery of the funds or deposit books to the parties named, and, by the terms of the parties, the funds were not made payable to such parties until after the death of the surviving depositor.      p. 40

A trust was thereby created in favor of the husband and wife for life and for the parties entitled after their death; such deposits constituted the husband and wife trustees of the funds for their own use during life and for the use of those who were named to receive them after their death; and upon the death of the survivor the trusts were at an end, the absolute estate being then in the persons to whom the funds were payable.      p. 43

The depositors having no right to revoke the trusts which they created, the bank held the funds for the trustees to be paid from their death to the parties designated.      p. 43

If a bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the frauds, it is liable therefor.                                                   p. 43

In order to transfer the title and perfect a gift *inter vivos,* the donor must part with the possession and control of the subject of the gift, and delivery is essential to a complete surrender of his dominion over it.                              p. 41

In case of a declaration of trust, the legal title is withheld from the donee and may be retained by the donor or transferred to a third person; but the equitable title vests in the *cestui que trust* and passes beyond the control of the donor, unless the declaration of trust contains a power of revocation.         p. 41

When a deposit in a bank is made in the name of the depositor in trust for another, the possession by the depositor of the bank book is a possession as by a trustee, and does not detract from the force of the entry, or indicate that no interest had been given to the *cestui que trust.*                       p. 42

A trust may be created without the words "in trust" being employed; the general purpose and intention of a donor, and not the use of one particular term or another, deciding the question of whether a party does or does not take in a fiduciary character.                                                    p. 42

*Decided March 18th, 1914.*

The facts are stated in the opinion of the Court.

Appeal from the Circuit Court for Frederick County, in Equity.   (URNER, C. J., PETER, and WORTHINGTON, JJ.)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Charles C. Waters* and *Albert S Brown,* for the appellants.

*John Francis Smith* and *Edward J. Smith,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

The controversy in this case involves the title to certain deposits in the Citizens Savings Bank of Thurmont, Frederick County, Maryland, and the facts which give rise to the litigation may be briefly stated as follows:

On the 19th of March, 1902, George Baker and Anna Barbara Baker, his wife, of Frederick County sold three parcels of land for $2,800.00. Two of these parcels belonged to Mr. Baker, and the remaining parcel had been previously conveyed to him and his said wife. $2,000.00 of the money received from the sale of said property was, on the 21st of March, 1902, deposited by Mr. Baker in his name in the Franklin Savings Bank of Frederick, and the remaining $800.00 was invested in property, containing about ten acres of land, which was conveyed to Mrs. Baker, March 22nd, 1902.

On the 29th of March, 1906, Mr. Baker drew the $2,000 out of the Franklin Savings Bank and deposited it, on the 31st of March, 1906, in the Citizens Savings Bank of Thurmont at three and one-half per cent interest. At the time he made the deposit in the latter bank he stated to the cashier that he wanted it deposited so that if he should die before his wife the money would be hers, and that if she should die first it would belong to him, and the deposit was entered in the books of the bank, and the deposit book given him, to the credit of "Mr. and Mrs. George Baker."

At the time this deposit was made Mr. and Mrs. Baker had five children living, namely, Mary M. Martin, Caroline Grimes, Barbara Smith, George H. Baker and Henry A. Baker, and a granddaughter, Ellen B. Wachter. About a year or two later, the precise time is not shown by the record, Mr. Baker re-deposited the $2,000.00 in the Citizens Savings Bank, or had the books of the bank and his bank book so changed as to make the entries in said books read as follows:

"Mary M. Martin, wife of David E. Martin, $400.
Caroline Grimes, wife of Charles Grimes, $500.
Barbara Smith, wife of Hebrew Smith, $500.

George H. Baker, $500.
Henry A. Baker, $100.
Mr. and Mrs. George Baker, payable at our death
to above children."

Whether the money was actually drawn and re-deposited, or the change was made by writing the names of the children and the respective amounts to be paid to them above the entry "Mr. and Mrs. George Baker" and adding the words "payable at our death to above children," does not appear, but the fact that the certified copy of the deposit book offered in evidence shows the date of the deposit to be March 31st, 1906, and does not show when the change was made, would indicate that the latter method was adopted.

On the 28th of January, 1908, the property which had been purchased and conveyed to Mrs. Baker in 1902 was sold for $1,300, and Mrs. Baker received the proceeds of sale. The purchase money was paid in cash and a check and note payable to her, and on the 29th of January, 1908, she sent the check for $600 to the Citizens Savings Bank by her son, Henry A. Baker, who deposited it according to her instructions as follows:

"Mary M. Martin, $200.00.
Barbara Smith, $100.00.
Caroline Grimes, $100.00.
Geo. H. Baker, $100.00.
Ellen B. Wachter, $100.00.
Mr. and Mrs. Geo. Baker, payable at our death to
the above."

Henry A. Baker received from the bank a bank-book showing the deposit of $600.00 as above stated, and when he returned home he delivered the book to his father. Mrs. Baker also sent the note to the bank with instructions to deposit the amount thereof when paid in the same account. The certified copy of the bankbook shows that the $600 was deposited as stated on the 29th of January, 1908, and that there were further deposits in the same account of $500.00 on the 26th, and $100.00 on the 30th of March, of the same year.

The evidence shows that Henry A. Baker, prior to the deposit of $2,000.00 had received from his father $400.00, and that the division of the $2,000.00 and the $600.00, as shown by the entries in the bank books, was made by Mr. and Mrs. Baker, with the view of giving each of their children $600.00 and their granddaughter, Ellen B. Wachter, $200; that all of their children, except Mrs. Martin, who resided in Ohio, knew how those sums had been deposited and divided; that Mr. and Mrs. Baker stated to them, and to a number of other witnesses who have no interest in the case, that they had divided the amounts mentioned so that each child would receive $600.00; that they had worked hard and wanted their children to have what they had, and that they made the deposits and divided the money so that at their death the parties named would receive the respective amounts without the expense of administration in the Orphans' Court; that they had retained the further sum of $600.00 to cover their funeral expenses and such other demands as they might have, and that that sum with the interest on the deposits would be all that they would need during their life.

The bank books showing the deposits were kept by Mr. Baker and he collected the interest during his life. He died in November, 1908, and after his death Mrs. Baker kept the bank books and received the interest on the deposits. She paid his funeral expenses, including cost of the tombstone and amounting to $218.75 out of the fund deposited in the second account.

In 1910 Mrs. Grimes purchased a property containing about ten acres of land from William H. Stull for $1,700.00. It was conveyed to her on the 15th of August, 1910, and $1,500.00 of the consideration was paid by Mrs. Baker by check drawn against the $2,000.00 deposited by Mr. Baker in the Citizens Savings Bank.

On the 26th of September, 1910, George H. Baker and Barbara A. Smith filed the bill of complaint in this case in the Circuit Court for Frederick County against Mrs. Baker, Mrs. Grimes and her husband, Henry A. Baker and his wife.

Mrs. Martin and her husband, Ellen B. Wachter and certain other grandchildren and next of kin of Mr. Baker, and the Citizens Savings Bank, to enjoin Mrs. Baker from drawing and the bank from paying any part of the funds remaining in said bank; to compel Mrs. Grimes to pay the $1,500.00 alleged to have wrongfully applied to the payment of the purchase price for the property conveyed to her, and to require the bank to indemnify the plaintiffs for any loss that they might sustain by reason of the misapplication of said sum.

The bill alleged that the deposits we have mentioned were made by Mr. Baker, and that his intention was "that the income arising from the deposit of two thousand dollars and the deposit of thirteen hundred dollars ($1300), which latter was composed of three separate deposits, should be used for the support of himself and his wife, so long as they or either of them should live and upon the death of the survivor said sums of money should be divided among his children in the manner indicated upon the books of said bank," and the plaintiffs asserted that they were entitled to their shares of the sums deposited either as donees or next of kin of Mr. Baker.

Mrs. Martin and her husband and George Neidick, a grandson of Mr. Baker, answered the bill admitting the matters alleged and consenting to such decree as might be proper in the premises. Ellen B. Wachter answered by guardian *ad litem,* and a decree *pro confesso* was passed against two other grandchildren who were made defendants. Mrs. Baker, Mrs. Grimes and her husband, Henry A. Baker and his wife and the Citizens Savings Bank demurred to the bill. The Court below overruled the demurrer, and they then answered the bill alleging that said deposits were made in the first instance to the credit of "Mr. and Mrs. George Baker," and that the additional entries in the books of the bank and in the deposit books were made at the instance and by the direction of Mr. Baker without the knowledge and consent of Mrs. Baker, and that she did not know that they had been made until after

his death; that the amounts deposited in the second account were derived from the sale of property that belonged to Mrs. Baker; that it was the intention of Mr. and Mrs. Baker to "create an estate by the entireties in their funds" and that with that intention "their estates" were reduced to money and the money was deposited "to the credit of Mr. and Mrs. George Baker" so that they would hold "a joint estate therein during their life" and the survivor would take the whole of what was left to do with as that survivor pleased," and that Mr. Baker attempted, by the additional entries in the bank books, to "change the ownership of said funds" without the assent of his wife, and that after Mr. Baker's death the funds deposited in the two accounts belonged to her absolutely.

The defense set up in the answer that Mr. Baker caused the entries in the bank books to be changed without Mrs. Baker's knowledge and consent, and that she did not know of it until the books came into her possession after his death, is not supported by the evidence in the case. On the contrary, in addition to the evidence in to which we have already referred, Henry A. Baker, one of the defendants, testified that at the time the property which stood in the name of Mrs. Baker was sold in 1908 for $1300.00, Mr. and Mrs. Baker were not well, and that Mrs. Baker, in the presence of Mr. Baker, gave him $600.00 to deposit in the Citizens Savings Bank and told him how they wanted it deposited; that they told him that they wanted it deposited as the $2,000.00 was deposited in the other account, and how they wanted the $600.00 divided among the parties named; that he told the officer of the bank what they said; that he received a deposit book from the bank, and that when he returned home he gave the book to his father, and that he put it away with the other book; that at the time Mrs. Baker gave him the $600.00 to deposit she also gave him $100.00 in money, and stated to him that they were going to put the other $600.00 in bank for their funeral expenses" and "the like of that." Mrs. Baker was also a witness in the case. At the time she testified she was seventy-eight years of age, and while her statements are

somewhat contradictory, her evidence clearly shows that she always knew how the deposits had been made and how the money had been divided; that she and Mr. Baker wanted the $2,000.00 and the $600.00 deposited in that way so that after the death of the survivor the parties named in the bank books could get their respective shares from the bank, and that said amounts would not, as she expressed it, have to go "through the Court."

The evidence also shows that Mr. Baker, before he sold his farm, executed a will, and that after the division of the money deposited in bank was made as indicated by the bank book, he destroyed his will. Mrs. Baker died in May, 1912, leaving a last will and testament by which she bequeathed "all her money deposited in the Citizens Savings Bank" to her son Henry A. Baker, and he, as the executor named in the will, was made a party to the suit.

The Court below held in respect to the $2,000.00 and the $600.00 deposited in the second account on the 29th of January, 1908, that a trust had been declared and created by Mr. and Mrs. Baker for their benefit during their life, and after the death of the survivor for the parties named in the bank books, and in respect to the balance of the funds deposited in the second account, that it was intended for the benefit of Mr. and Mrs. Baker "as tenants by the entireties," and belonged to Mrs. Baker as the survivor, and accordingly passed a decree requiring Mrs. Grimes to deposit to the credit of the first account, on or "before the 18th of August, 1913," the $1.500.00 withdrawn therefrom, with the interest thereon from the expiration of the life estate of Mrs. Baker, less the $600.00 to which she was entitled as her share of said deposits according to the entries in said bank books, and interest thereon from the date of Mrs. Baker's death, and requiring the bank to pay the $600.00 deposited on the 29th day of January, 1908, together with any interest that may have accrued thereon since the death of Mrs. Baker, to the parties named in the bank book containing said deposits, except Mrs.

Grimes, in accordance with the entries therein, and also requiring the bank, when the amount decreed to be paid by Mrs. Grimes shall have been deposited in the first account, to pay to the parties named in the bank book containing said account, other than Mrs. Grimes, the respective amounts therein mentioned, together with any interest that may have accrued thereon since the death of Mrs. Baker. The decree further required the costs to be paid equally by Mrs. Grimes and Henry A. Baker, executor of Barbara Baker, and reserved the matter of the liability of the bank for future determination.

We entirely concur in the conclusion reached by the lower Court. The $2,000.00 was originally deposited by Mr. Baker in the Citizens Savings Bank to the credit of himself and wife. He did not reserve the right to withdraw the fund from the bank, and under the decision in *Brewer* v. *Bowersox,* 92 Md. 567, he created by said deposit a tenancy by the entireties in the fund, which could not be destroyed except by the joint act of himself and wife, and to which the right of survivorship was incident. Subsequently the money was redeposited, or the entry in the deposit book was changed so as to make the sum deposited payable at their death, or the death of the survivor, to the parties named in the book in the amounts specified. The change was made by the direction of Mr. Baker with the knowledge and consent of Mrs. Baker and, according to the evidence, in compliance with her urgent and repeated requests. The entries in the two deposit books did not amount to valid gifts *inter vivos* because there was no delivery of the funds or the deposit books to the parties named therein, and by the terms of the entries in the deposit books the funds were not payable to them until after Mrs. Baker's death. *Taylor* v. *Henry,* 48 Md. 550; *Dougherty* v. *Moore,* 71 Md. 248; *Whalen* v. *Milholland,* 89 Md. 199; *Brewer* v. *Bowersox, supra.*

The evidence shows that the intention of Mr. and Mrs. Baker was to reserve for themselves the interest on said deposits during their life, and the life of the survivor, and

that at the death of the survivor the $2,000 and the $600 should be paid by the bank to the parties named in the deposit books as therein indicated, and that they adopted the form of the entries mentioned to effectuate their purpose. In the case of *Taylor* v. *Henry, supra,* JUDGE ALVEY, speaking of trusts, said: "The cases upon this subject establish the doctrine to be, that where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the subject of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion over it; and in such gifts of mere personal estate, the declaration of trusts may be made and proved by parol; without the aid of writing. And the cases go to the length of maintaining that where the author of the gift retains the *legal* dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated, there he will be treated as trustee, and the object of his bounty will be given the benefit of the trust. In all such cases, the declaration of trust is considered in a Court of Equity as equivalent to an actual transfer of the legal interest in a Court of law; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration. * * * The principle of these cases, to the extent we have stated it, has been fully recognized and adopted by this Court, in *Cox* v. *Sprigg,* 6 Md. 274, and *Smith* v. *Darby,* 39 Md. 268, etc."

There is a clearly defined and well recognized difference between a declaration of trust and a gift *inter vivos.* In the latter, in order to transfer the title and perfect the gift, the donor must part with the possession and control of the subject of the gift, and delivery is essential to a complete surrender of his dominion over it. In the former the legal title is withheld from the donee, and may be retained by the donor or transferred to a third person, but the equitable title vests in the *cestui que trust,* and passes beyond the control of the donor, unless the declaration of trust contains a power of

revocation. When a deposit in a bank is made in the name
of the depositor in trust for another, the possession by the
depositor of the bank book is a possession by the trustee,
and does not detract from the force of the entry, or indicate
that no interest had been given to the *cestui que trust.* *Mil-
holland* v. *Whalen,* 89 Md. 212; *Littig* v. *Mt. Calvary
Church,* 101 Md. 494. In *Milholland* v. *Whalen, supra,* the
entry in the pass book was: "Metropolitan Savings Bank, in
account with Miss Elizabeth O'Neill. In trust for herself and
Mrs. Mary Whalen, widow, joint owners subject to the order
of either; the balance at the death of either to belong to the
survivor." The Court held that the entry expressed the in-
tention of Miss O'Neill and amounted to a complete and ir-
revocable trust, and CHIEF JUDGE MCSHERRY in the course
of his opinion said: "Nor does the circumstance that the
depositor makes himself a beneficiary jointly with another,
prevent the trust from attaching to the fund. A trust is not
rendered void by the appointment of a beneficiary as trustee.
* * * We have, then, a valid declaration of trust impressed
upon the funds in bank, and the bank holding them, not as
trustee, but *for* the trustee, with knowledge of the conditions
of the trust. The trustee was seized of the money for the use
of herself and her sister, as joint owners of the equitable in-
terest; and both were authorized to draw the funds upon pro-
ducing the bank book. But this is not all. The declaration
of trust transferred to the trustee the legal title for the bene-
fit of the survivor of the two *cestuis que trustent,* as to the
balance of the fund remaining in bank on the death of either."

In the case at bar the words "in trust" were not employed,
but the intention to create a trust is clearly shown by the
evidence in the case. In the case of *Gardner* v. *Merritt,* 32
Md. 78, the Court, quoting from *Hill on Trustees,* said:
"In every case the general purpose and intention of a donor,
and not the use of one particular term or another, will decide
the question of whether a party does or does not take in a
fiduciary character."

Here the funds were deposited in the savings bank to the credit of Mr. and Mrs. Baker, payable after their death to the persons named, for the purpose of enabling Mr. and Mrs. Baker, to received the interest during their life, and to secure the payment after their death of the several amounts specified to their children and grandchild. A trust was thereby created in favor of Mr. and Mrs. Baker for life, and for the parties entitled after their death. The declaration of trust constituted Mr. and Mrs. Baker trustees of the funds for their own use during their life, and for the use of those who were named to receive them after their death. Upon the death of the survivor the trusts were at an end, and the absolute estate was in the persons to whom the funds were payable. *Denton* v. *Denton,* 17 Md. 403; *Milholland* v. *Whalen, supra.*

Mr. and Mrs. Baker did not reserve the right to revoke the trust, and Mrs. Baker had no power to do so. The bank held the funds for the trustees, and by the terms of the entries they were payable after their death to the parties therein designated. It has, therefore, no cause to complain of the action of the Court below in reserving for future decree the matter of its liability for the misapplication of the trust fund in the first account. If Mrs. Grimes pays the amount she was required to pay by the decree of the Court below the bank will not sustain any loss by reason of the diversion of the fund. *Miller's Equity Proc.,* sec. 263. In the case of *Duckett* v. *Mechanics' Bank,* 86 Md. 400, the Court said: "But if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable." See also *Second Natl. Bank.* v. *Wrightson,* 63 Md. 81, and *Swift* v. *Williams,* 68 Md. 236.

> *Decree affirmed, with costs to the appellees, and case remanded for further proceedings.*