ENNIS *v.* DONOVAN

[No. 244, September Term, 1959.]

*Decided June 10, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*John W. T. Webb* and *Alexander G. Jones,* with whom were *Edgar A. Jones* and *Jones & Jones* on the brief, for the appellant.

*Thomas S. Simpkins,* with whom were *Lloyd L. Simpkins* and *Simpkins & Simpkins* on the brief, for the appellee.

Prescott, J., delivered the opinion of the Court.

On June 30, 1958, William H. Donovan was operating a motor vehicle in a southerly direction on U. S. Route 13, a public highway, in Somerset County, and his wife was accompanying him as a passenger. Sidney B. Ennis was driving his car in an opposite direction, and the two vehicles collided. Mrs. Donovan died a few days thereafter allegedly as a result of injuries received in the collision.

Suits were instituted against Ennis in the Circuit Court for Somerset County, all alleging that his negligence caused the accident, without any negligence by either Mr. or Mrs. Donovan contributing thereto: one (1) was by Donovan as administrator of his wife's estate; one (2) by Donovan, individually, for his personal injuries and damages to his car; and another (3) by the State to the use of Donovan under the provisions of Code (1957), Article 67.

In case (2) above, Ennis filed general issue pleas and a counterclaim against Donovan. The case has not been tried, and is not involved in this appeal.

In cases (1) and (3), Ennis filed general issue pleas and third-party claims, pursuant to Rule 315, which alleged that Donovan, "is or may be liable to this defendant (Ennis) for all or a part of the plaintiff's said claim." Demurrers were filed to both of the third-party claims on the ground that at the time of the alleged tortious act of the third-party defendant, he and the deceased, Mary J. Donovan, were husband and wife; and, being thusly related, the wife could not have sued him had she lived, nor can her personal representative sue the surviving husband, as there is no civil right of action

for personal injury between husband and wife during coverture. The trial court sustained the demurrers in both cases, without leave to amend, and Ennis has appealed. No procedural question is raised by the appellant.

It will be noted that one case is based upon Code (1957), Article 93, Section 112; the other upon Article 67 of the same Code. Section 112 provides that administrators, "shall have full power to commence and prosecute any personal action whatever * * * *which the testator or intestate might have commenced and prosecuted,* except actions of slander * * *," and Article 67, Section 1, states that whenever the death of a person shall be caused by wrongful act, neglect or default, and "the act, neglect or default is such as would (if death had not ensued) *have entitled the party injured to maintain an action and recover damages* in respect thereof, the vessel or person who would have been liable if death had not ensued, * * * shall be liable to an action for damages, * * *." (Italics supplied.) Due to the similarity of the italicized portions of the statutes, the two cases may be considered together.

The appeal turns upon whether or not Mrs. Donovan, the plaintiff's decedent, could have "maintain[ed] an action and recover[ed] damages" against the third-party defendant, her husband, on account of his negligent operation of his automobile. This is so because the right, if any, of Ennis, the defendant, to contribution from Donovan, the third-party defendant, is a derivative right and not a new cause of action. *Baltimore Transit Co. v. State,* 183 Md. 674, 679, 39 A. 2d 858; *Zaccari v. United States,* 130 F. Supp. 50, 51, 52 (Md. D. C.) ; *Yellow Cab Co. v. Dreslin,* 181 F. 2d 626 (U. S. App. D. C.). There was, of course, no common-law right to contribution among joint tortfeasors, *Baltimore Transit Co. v. State, supra.* In Maryland, this right is conferred by Code (1957), Article 50, Sections 16-24. Section 16 provides that joint tortfeasors "means two or more persons jointly or severally *liable in tort for the same injury* to person or property"; consequently, in accordance with our above statement, we must determine whether the third-party defendant would have been "liable" to his wife for his negligence had she lived. As stated by Judge Henderson for the Court in the *Baltimore Transit Co.*

case, *supra*: "We think these provisions make it clear that the Act [Uniform Contribution among Tort-Feasors Act] is only applicable to a situation where there is a common liability to an injured person in tort. * * * there can be no contribution where the injured person has no right of action against the third-party defendant."[1]

This brings us to a consideration of the pivotal question in the appeal. The appellant concedes that "at common law there is no right in a married woman to sue her husband in tort." He argues, however, that the underlying reason for the rule, namely, "that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust" is not present in the instant case as Mrs. Donovan is dead; and, therefore, the rule should not be applied. As pointed out in 43 A. L. R. 2d at page 651, the Courts, in adhering to, or rejecting, the common-law rule of spousal immunity from personal injury action because of the husband-wife relationship, have given various reasons for their holdings; but the difference in result, usually, is due to an interpretation of the applicable married women's acts. It would therefore, be of little use to discuss elaborately the ruling of the Courts elsewhere.[2]

A case in Pennsylvania, *Johnson v. Peoples First Nat'l Bank & Trust Co.,* 145 A. 2d 716, stated the rule in that state was that one spouse could not maintain an action *during coverture* against the other spouse to recover damages for personal injuries, but permitted a widow to maintain a suit against her deceased husband's personal representative for damages resulting from the alleged negligent operation of a motor vehicle. The Court stated, as the reasons for its holding, that when the tort of a husband visits injury upon his wife, it results in a *cause of action,* but that public policy—the

---

1. Chief Judge Niles and Judge Frank, respectively, applied the rule in Eisner v. Saxon, Daily Record, March 14, 1955, and Kovitz v. Neumann, Daily Record, April 24, 1942.

2. There is a very interesting and instructive essay upon the subject of interspousal liability or immunity from suit for torts in "Selected Essays on Family Law" beginning at page 396; see also 43 A. L. R. 2d 632.

preservation of domestic peace and felicity—prevents the *enforcement* of the right of action; and death having terminated the marriage, domestic harmony and felicity would suffer no harm from the allowance of the enforcement of the cause of action. Cf. *Schubert v. August Schubert Wagon Co.,* 164 N. E. 42 (N. Y. 1928).

Maryland, however, has adhered to what is the majority view in this country, *i.e.,* that at common law the wife had *no cause of action* against her husband for negligent personal injury, and our so-called Married Women's Act [Code (1957), Article 45, Section 5] conferred no such right. *Furstenburg v. Furstenburg,* 152 Md. 247, 136 A. 534. In that case, the Court followed the construction given by the Supreme Court of the United States to an almost identical statute of the District of Columbia. *Thompson v. Thompson,* 218 U. S. 611.

The *Furstenburg* case was followed by *David v. David,* 161 Md. 532, 157 A. 755, wherein it was held that the rule extended so as to prevent such suits by a wife against a partnership of which her husband was a member. In that case, Judge Offutt, for the Court, stated:

> "* * * So that, in this state, in an action by a married woman against her husband, based upon loss or damage occasioned by his negligent or wrongful act, her coverture at the time of the tort *is a complete bar to the action,* not because she was a married woman at the time of the tort, but because she was at that time married to the defendant; the effect of the Married Woman's Acts in this state, as construed in *Furstenburg v. Furstenburg, supra,* being merely to remove the disability which at common law prevented a married woman from suing in tort in her own name, but *not to create* in such cases as this a cause of action where none existed before." (Italics added.)

See also *Riegger v. Brewing Company,* 178 Md. 518, 16 A. 2d 99.

In *Gregg v. Gregg,* 199 Md. 662, 87 A. 2d 581, a case where a wife attempted to sue her husband for reimbursement

of sums expended by her for necessaries, this Court stated: "There was no right in a married woman to sue her husband at common law, and, therefore, any right which she has in this respect must be conferred upon her by statute. * * * The only question is whether the statute has removed her common law disability to the extent of allowing her to bring such a suit. If the Legislature has not done this, then it is beyond our power to give her such a right * * *. The courts do not make laws * * *. * * * In the *David* case, the court said * * * that any change in the common law rule had to be by *express legislative mandate.* * * * If now this omission [the lack of express mandate from the legislature] should be repaired, it is for the Legislature, and not for us, to act." See also *Fernandez v. Fernandez,* 214 Md. 519, 135 A. 2d 886.

The same argument advanced by the appellant here—that after the husband-wife relationship is broken up, or discord, suspicion and distrust have entered the home, it is idle to say that one of the parties should not be allowed to sue the other for fear of disrupting a home that has already been disrupted —was advanced and rejected in both the *Gregg* and *Fernandez* cases, *supra.*

Following the same reasoning as that stated in the *Johnson* case, *supra,*—that when a husband negligently causes injury to his wife a cause of action arises, but its enforcement is prevented on the ground of public policy—the Superior Court of New Jersey, Law Division, permitted a deceased husband's administrator to be impleaded as a third-party defendant in the wife's suit against the operator of a motor vehicle that had collided with the husband's automobile, in which the wife was a passenger. *Long v. Landy,* 158 A. 2d 728. See also *Fisher v. Diehl,* 40 A. 2d 912 (Pa. Super Ct.). A diametrically opposite result was reached in *Ackerson v. Kibler,* 249 N. Y. S. 629 (Sup. Ct. App. Div.), and in *Schroeder v. Longenecker,* 7 F. R. D. 9 (D. C. Mo.), construing Missouri law, both jurisdictions that hold, as does Maryland, that a wife has no cause of action against her husband for injuries received by her as a result of his negligence.

From what we have said above, it is seen that this Court has flatly held that a married woman had no common-law

right to sue her husband for injuries suffered by her as the result of his negligence, and, the Legislature has not yet seen fit to grant her such a right. It has also stated that if this disability is to be removed, it must be done by the law-making branch of the government. We can only repeat that if it be desirable to permit a married woman, under certain circumstances, to sue her husband in tort, this authorization should emanate from the Legislature, not from the courts.

This leaves two subsidiary questions to be answered. The appellant mildly suggests that Rule 315 is broad enough and was intended to be such that "a wife could indeed sue her husband in tort." In other words, he argues that Rule 315 is broad enough to create a substantive right in a wife to sue her husband in tort. The substantive right to contribution is conferred by the Legislature in Code (1957), Article 50, Section 17. Rule 315 of this Court does not even purport to grant substantive rights, but sets forth the procedure and remedies for the enforcement of such rights. *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 351, 94 A. 2d 26; *Stem v. Nello L. Teer Co.,* 213 Md. 132, 142, 130 A. 2d 769.

Finally, the appellant argues that "to relieve the third-party defendant from liability" in these cases would allow him an opportunity "to profit by his own wrong, contrary to a basic premise of our law." If this be so, it may be a strong reason in favor of a legislative change, but it cannot create a right of action where none exists.

*Order affirmed, with costs.*